FILED
2010 Mar-25  PM 03:54
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| **PAMELA A. MARTIN,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.: 5:09-CV-1029-VEH** |
| | ) |
| **MICHAEL J. ASTRUE,** | ) |
| **Commissioner,** | ) |
| **Social Security Administration,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION[1]

Plaintiff Pamela A. Martin ("Ms. Martin") brings this action pursuant to 42

U.S.C. §§ 216(i) and 223(d) of the Social Security Act.  She seeks review of a final

adverse decision of the Commissioner of the Social Security Administration

(hereinafter "Commissioner" or "Secretary"), who denied her application for

Disability Insurance Benefits ("DIB").  Ms. Martin timely pursued and exhausted her

---

[1] The undersigned has recently rendered three other decisions which similarly address the inadequacies of the respective ALJ's RFC determinations from which the framework, analysis, and disposition of this case persuasively flow.  *See, e.g., Mahaley v. Astrue*, No. 5:09-CV-0347-VEH, (Docs. 12, 13) (N.D. Ala. Feb. 18, 2010) (reversing and remanding under similar circumstances in which the court found that the ALJ's RCF finding was not supported by substantial evidence); *Glover v. Astrue*, No. 3:09-CV-0033-VEH, (Docs. 15, 16) (N.D. Ala. Mar. 4, 2010) (same); *Johnson v. Astrue*, No. 3:08-CV-1761-VEH, (Docs. 15, 16) (N.D. Ala. Mar. 12, 2010) (same).

administrative remedies available before the Commissioner.  The case is ripe for

review pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act.

## FACTUAL AND PROCEDURAL HISTORY

Ms. Martin was a 48-year-old female at the time of the hearing before the

administrative law judge ("ALJ") held on September 27, 2007.  (Tr. 50, 46).  Ms.

Martin completed high school.  (Tr. 50).  She has no college degree.  (*Id.*).  Ms.

Martin's past gainful work experiences include employment as a secretary and

customer service representative.  (Tr. 49).

Ms. Martin claims disabled status beginning on November 24, 2005.  (Tr. 26,

73).  She basis her DIB application upon the following conditions:  sarcoidosis,[2]

cervico-brachial syndrome,[3] a torn rectum, high blood pressure, diabetes mellitus,

---

[2]  As Ms. Martin has summarized this lung condition:

> In pulmonary sarcoidosis, patients may have a dry cough (without
> sputum), shortness of breath, or mild chest pain.  In those cases whether
> symptoms do appear outside the lung, the can include a scaly rash, red
> bumps on the legs, fever, soreness of the eyes, and pain and swelling of
> the ankles.  There can also be more general symptoms like fatigue,
> weakness, fever, and weight loss.

(Doc. 9 at 10 n.3 (citation omitted)).

[3]  "Cervicobrachial syndrome is a nonspecific term describing some
combination of pain, numbness, weakness, and swelling in the region of the neck and
shoulder."   *See* http://www.mdguidelines.com/cervicobrachial-syndrome   at
"Definition"  section (accessed  on  Mar.  24,  2010).   "The  definition  of

pneumonia, and depression.  (Tr. 28-30).

Ms. Martin protectively filed an application for a period of disability and DIB on May 1, 2006.  (Tr. 26, 57).  Her DIB claim was denied initially on June 7, 2006. (Tr. 26, 57-58).  Ms. Martin then timely filed a request for a hearing on August 7, 2006.  (Tr. 29, 64).

A hearing was held before the ALJ on  September 27, 2007.  (Tr. 46).  The ALJ concluded Ms. Martin was not disabled as defined by the Social Security Act and denied her application on November 30, 2007.  (Tr. 26-36).  Ms. Martin subsequently filed a timely request for review with the Appeals Council (Tr. 20), and on April 1, 2009, it denied review, which resulted in the ALJ's ruling becoming the final decision of the Commissioner.  (Tr. 1).

On May 26, 2009, Ms. Martin filed her complaint with this court asking for review of the ALJ's decision.  (Doc. 1).  This court has carefully considered the record, and for the reasons stated below, remands the Commissioner's denial of benefits for further evidentiary development and consideration.

**STANDARD OF REVIEW**

---

'cervicobrachial syndrome' is probably unique to the doctor who uses the term. It may be that an alternate, objectively documentable diagnosis is present, but most often the diagnosis of 'cervicobrachial syndrome' refers to symptoms for which there is no proven diagnosis." *Id.*

The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales,* 402 U.S. 389, 390 (1971); *McRoberts v. Bowen,* 841 F.2d 1077, 1080 (11th Cir. 1988); *Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1983); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth*, 703 F.2d at 1239. This court will determine that the ALJ's opinion is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. Substantial evidence is "more than a scintilla, but less than a preponderance." *Id.*

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his entitlement for a period of disability, the claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[4] The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death

---

[4] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, as current through March 12, 2010.

or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months."   20 C.F.R. § 404.1505(a).   To establish an entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled.  20 C.F.R. § 404.1520(a)(4)(i-v).  The Commissioner must determine in sequence:

(1)   whether the claimant is currently employed;
(2)   whether the claimant has a severe impairment;
(3)   whether the claimant's impairment meets or equals an impairment listed by the Secretary;
(4)   whether the claimant can perform her past work; and
(5)   whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to former applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel,* 189 F.3d 561 (7th Cir. 1999); *accord, McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).   "Once the claimant has satisfied steps one and two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the Secretary to show

that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord*, *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).  The Commissioner must further show that such work exists in the national economy in significant numbers.  *Foote*, 67 F.3d at 1559.

## FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

The ALJ found Ms. Martin had not engaged in substantial gainful activity since the onset of her disability on November 24, 2005.  (Tr. 28). Thus, the claimant satisfied step one of the five-step test.  20 C.F.R. § 404.1520(b).

Under step two, the ALJ concluded that "[t]he claimant has the following severe combination of impairments:  sarcoidosis and cervico-brachial syndrome[.]"[5] (Tr. 28 (citation omitted)).  Accordingly, the ALJ concluded that Ms. Martin satisfied the second step of the sequential disability evaluative process.   20 C.F.R. § 404.1520(c).

At step three, the ALJ determined that Ms. Martin did not have an impairment or a group of impairments that met or medically equaled one of the listed impairments

---

[5] The ALJ also decided that Ms. Martin's torn rectum, diabetes, pneumonia, and depression were not severe impairments (Tr. 29, 30) and that her high blood pressure did "not give rise to a medically determinable impairment[.]"  (Tr. 29 (citation omitted)).

in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 30).  Ms. Martin does not dispute

this finding on appeal.

The ALJ then evaluated Ms. Martin's residual functional capacity ("RFC") at

step four, and the claimant was found to have the ability  "to perform the full range

of sedentary work except for restrictions on exposure to pulmonary irritants."[6]  (Tr.

30).  As the ALJ further explained Ms. Martin's vocational limitations:

> That is, in an eight-hour workday, she can sit six to eight hours total,
> stand and walk up to two hours total, and lift and carry 10 pounds at a
> time with occasional lifting or carrying of articles like docket files,
> ledgers, and small tools.  She is restricted from work involving exposure
> to temperature extremes, wetness, humidity, or pulmonary irritants.

(Tr. 30).

Accordingly, in light of these work-related restrictions, the ALJ really found

that Ms. Martin was able to perform a <u>reduced</u> range of sedentary jobs.  Then, in

reliance upon vocational expert testimony, the ALJ determined that Ms. Martin was

"capable of performing past relevant work as a secretary and as a customer service

representative."  (Tr. 35).

---

[6]  "Sedentary work involves lifting no more than 10 pounds at a time and
occasionally lifting or carrying articles like docket files, ledgers, and small tools.
Although a sedentary job is defined as one which involves sitting, a certain amount
of walking and standing is often necessary in carrying out job duties.  Jobs are
sedentary if walking and standing are required occasionally and other sedentary
criteria are met."  20 C.F.R. § 404.1567(a).

Because of the ALJ's finding that Ms. Martin was able to perform past relevant work, it was unnecessary to continue to step five of the sequential analysis. (Tr. 35-36).  Accordingly, the ALJ concluded Ms. Martin was not disabled as defined by the Social Security Act, at any time from November 24, 2005, through November 30, 2007, the date of the ALJ's decision, and denied her DIB claim. (Tr. 36).

## ANALYSIS

The court can reverse a finding of the Secretary if it is not supported by substantial evidence.  42 U.S.C. § 405(g).  "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).[7]

In this appeal, Ms. Martin raises several issues, including the validity of the ALJ's RFC determination. (Doc. 9 at 9).  The court turns to the RFC issue first, and

_____

[7]  In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

agrees with Ms. Martin that under the circumstances of her case, the ALJ committed

reversible error.[8]

**I.      IN THE ABSENCE OF ANY OTHER MEDICAL SOURCE STATEMENT OR A PHYSICAL CAPACITIES EVALUATION BY A PHYSICIAN, THE ALJ'S RFC DETERMINATION THAT MS. MARTIN CAN PERFORM A REDUCED RANGE OF SEDENTARY WORK IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE.**

Regarding her RFC, Ms. Martin specifically maintains in part that:

> The ALJ's opinion is further not based on substantial evidence because there is no other medical opinion of record on which he could rely. There is not even a State Agency RFC assessment generated by a medical consultant or a non M.D. single decision maker. The Disability Transmittal which bears no physician signature or input incredibly establishes that Ms. Martin's claim was denied on the strength of a few line recorded on a Report of Contact dated June 7, 2006 by a disability specialist (R. 171) whose status as such is confirmed in the procedural documents (e.g. R. 110).

> . . .

> The ALJ erred in rejecting a treating physician's opinion that would support [a finding of disability] and in unilaterally making RFC findings in the absence of any other medical opinion or RFC assessment on which to rely[.]

(Doc. 9 at 7, 11 (emphasis added)).

In support of his RFC determination, the ALJ states in part regarding the

opinion evidence contained in the record:

---

[8] As a result, the court does not reach the merits of the other issues raised on appeal.

> As for the opinion evidence, the undersigned gives substantial weight to certain aspects of Dr. Morris' opinion which are in fact consistent with the residual functional capacity determined in this decision.  It is Dr. Morris' opinion that in an eight-hour workday the claimant can stand for a total of two to three hours, walk for a total of 30 minutes, and sit for a total of four to six hours (Exhibit 8F).  <u>As for his opinion regarding her ability to lift, carry, perform postural activities, and work in environmental conditions, the undersigned gives little weight to his opinions in those areas as his own records fail to support such limitations</u>.

(Tr. 34 (emphasis added)).  The ALJ then proceeds to explain his reasoning for only partially crediting Dr. Morris's functional assessment of Ms. Martin.  (*Id.*).

However, in reaching his conclusion directly contrary to the restrictions that Dr. Morris placed on Ms. Martin regarding her ability to lift, carry, perform postural activities, and work in environmental conditions, the ALJ fails to point to any other documentation in the  record that provides substantial evidence in support of his determination that Ms. Martin is capable of performing a limited range of sedentary work, given her combined severe impairments of sarcoidosis and cervico-brachial syndrome.[9]  Relatedly, in light of the ALJ's decision to only partially accept Dr.

---

[9] The ALJ notes that Ms. Martin's treating chiropractor, Dr. Morgan, provided a medical source opinion in May 2007 after diagnosing her with cervico-brachial syndrome in January 2007 that is generally consistent with Ms. Martin's ability to perform sedentary work (Tr. 196-97), but expressly states that he "gives such opinion <u>no weight</u> as Dr. Morgan indicated he completed such opinion primarily based on the claimant's subjective complaints."  (Tr. 32, 34-35 (emphasis added)).  Therefore because the ALJ has entirely discounted it, Dr. Morgan's opinion cannot provide substantial evidence in support of Ms. Martin's RFC determination.  Moreover, even

Morris's functional assessment of her, the record lacks an alternative medical source opinion[10] that indicates what type of work Ms. Martin is capable of performing or delineates what vocational restrictions are appropriate given her severe impairments.

The ALJ does discuss examinations of Ms. Martin by Dr. Shergy and Dr. Chappell as supportive of his RFC determination. (Tr. 34). Specifically, the ALJ states in part that:

> Drs. Shergy and Chappell both thoroughly examined the claimant in 2006 and found the claimant to have normal musculoskeletal or neurological functioning with full range of motion and use of all joint, full strength, and normal sensation and reflexes. Subsequent to those examinations, there is no objective evidence of deterioration of such functioning, thus the undersigned finds the claimant continues to have such normal functioning.

(Tr. 34).

The court has studied the materials relating to Dr. Shergy's and Dr. Chappell's treatment of Ms. Martin. The documents from Dr. Shergy of Rheumatology Associates of North Alabama, P.C. (Tr. 136-38) pertain to an office visit on February

---

if the ALJ had given great weight to Dr. Morgan's physical assessment of Ms. Martin, the evidentiary worth of the report would still be debatable given the treating source's status as a licensed chiropractor, but not as a licensed physician. (Tr. 192).

[10] "Medical source statements are 'medical opinions submitted by acceptable medical sources, including treating sources and consultative examiners, about what an individual can still do despite a severe impairment(s), in particular about an individual's physical and mental abilities to perform work-related activities on a sustained basis.'" SSR 96-5p.

6, 2006, to investigate Ms. Martin's complaint about leg aches.  (Tr. 136).  As a part

of this examination, Dr. Shergy provided no medical source statement or physical

capacities evaluation of Ms. Martin.   Relatedly,  he suggested no work-related

restrictions for her.  Therefore, the treatment records from Dr. Shergy cannot provide

substantial evidence in support of  the ALJ's RFC determination applicable to Ms.

Martin.

Dr. Chappell practices with OB/GYN Associates of Northwest Alabama, P.C.

(Tr. 148).  While Dr. Chappell does make some observations of Ms. Martin relating

to a review of her musculoskeletal system, nowhere in the collection of documents

relating to Dr. Chappell does he provide a physical capacities assessment of Ms.

Martin  or  suggest  that  a  range  of  limited  sedentary  work  or  any  job-related

restrictions are appropriate for her in light of her severe impairment of sarcoidosis

and cervico-brachial syndrome.  (Tr. 144-170).  Accordingly, Dr. Chappell's records

similarly  do  not  provide  substantial  evidence  in  support  of  the  ALJ's  RFC

determination that Ms. Martin is capable of performing a reduced range of sedentary

work.

Now, this court must decide whether the ALJ's RFC determination is supported

by substantial evidence when he elects to only partially accept a medical source

opinion and otherwise purports to reject it (to the extent that it is inconsistent with his

RFC finding)[11] and relies on no other physician input regarding Ms. Martin's functional abilities in light of her severe impairments.  Under the circumstances of this case, the court concludes that the ALJ's RFC determination is not adequately supported.  *See, e.g., Rohrberg v. Apfel*, 26 F. Supp. 2d 303, 311 (D. Mass. 1998) ("The ALJ failed to refer to-and this Court has not found-a proper, medically determined RFC in the record.") (emphasis added).

As another district judge of this court aptly explained the RFC issue in the context of an ALJ who determined that the claimant was able to perform her past relevant work without the benefit of a physical capacities evaluation conducted by a physician:

> While the Record contains Ms. Rogers['s] medical treatment history, it lacks any physical capacities evaluation by a physician. The ALJ made his residual functional capacity evaluation without the benefit of such evaluation. An ALJ is allowed to make some judgments as to residual physical functional capacity where so little physical impairment is involved that the effect would be apparent to a lay person. *Manso-Pizarro v. Secretary of Health and Human Services*, 76 F.3d 15 (1st Cir. 1996).  In most cases, including the case at bar, the alleged physical impairments are so broad, complex, and/or ongoing that a

---

[11]  As Ms. Martin correctly observes, on the one hand, the ALJ states that he disregards Dr. Morris's environmental considerations as not supported by his treatment records (Tr. 34), while on the other hand, he "ultimately [incorporates] environmental restrictions" into his RFC finding without referring to any other evidence contained in the record substantiating the validity of those particular limitations.  (Tr. 30; Doc. 9 at 6).  Therefore, the true scope of the ALJ's partial rejection of Dr. Morris's functional assessment is murky at best.

physician's evaluation is required. *Id.* <u>In order to have developed a full, fair record as required under the law, the ALJ should have re-contacted Ms. Roger's [sic] physicians for physical capacities evaluations and/or sent her to physicians for examinations and physical capacities evaluations.</u> Further, Ms. Rogers'[s] ability to lift and to manipulate objects must be thoroughly evaluated by at least one physician. These evaluations shall be obtained upon remand. Ms. Rogers'[s] residual functional capacity was not properly determined nor supported by substantial evidence in this case.

*Rogers v. Barnhart*, No. 3:06-CV-0153-JFG, (Doc. 13 at 5) (N.D. Ala. Oct. 16, 2006) (emphasis added); *see also Manso-Pizarro*, 76 F.3d at 17 ("With a few exceptions (not relevant here), <u>an ALJ, as a lay person, is not qualified to interpret raw data in a medical record</u>.") (emphasis added) (citations omitted); *Rohrberg*, 26 F. Supp. 2d at 311 ("<u>An ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings</u>, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence.") (emphasis added) (citation omitted).

In this instance, because the ALJ has partially rejected <u>the one medically-determined RFC that exists in the record and that was prepared by a treating physician</u>, the ALJ has  apparently based a portion of his RFC finding, including in particular, the lifting and carrying, temperature, wetness, humidity, and pulmonary restrictions that he placed upon her, from his interpretation of raw medical data. Comparable to *Rogers*,  *Manso-Pizarro*, and other similar cases,  a lay person, such

as an ALJ, especially given his admitted unfamiliarity with sarcoidosis (Tr. 52-53

("Well, I don't know where I can find some information on that [*i.e.*, sarcoidosis] but

it's going to be in post-development anyhow .")),  is not able to discern Ms. Martin's

work-related functional abilities based upon the unfiltered information contained in

her medical records.

Therefore, having partially rejected a treating physician's opinion and in the

absence of an alternative medical source statement and/or physical capacities

evaluation conducted on Ms. Martin by a physician that substantiates the type of

work-related restrictions that the ALJ arrived at here, the record has not been

adequately developed. *See, e.g., Cowart v. Schweiker*, 662 F.2d 731, 732 (11th Cir.

1981) (citing *Thorne v. Califano*, 607 F.2d 218, 219 (8th Cir. 1979)); *see also*

*Sobolewski v. Apfel*, 985 F. Supp. 300, 314 (E.D.N.Y. 1997) ("The record's virtual

absence of medical evidence pertinent to the issue of plaintiff's RFC reflects the

Commissioner's failure to develop the record, despite his obligation to develop a

complete medical history.") (citations omitted).

Therefore, the ALJ's determination that Ms. Martin can perform sedentary

work with restrictions is not supported by substantial evidence. Accordingly, the

decision of the Commissioner is due to be reversed, and the case remanded for further

proceedings consistent with this memorandum opinion.

## CONCLUSION

Based upon the court's evaluation of the evidence in the record and the submissions of the parties, the court finds that the Commissioner's final decision is not supported by substantial evidence.   Accordingly, the decision of the Commissioner will be remanded by separate order.

**DONE** and **ORDERED** this the 25th day of March, 2010.

**VIRGINIA EMERSON HOPKINS**
United States District Judge